**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **THE COOPER-CLARK FOUNDATION, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 22-4048-KHV** |
| **SCOUT ENERGY MANAGEMENT, LLC, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

On August 27, 2024, the Court held oral argument on Plaintiff's Motion For Class Certification And Brief In Support (Doc. #57) filed February 2, 2024. Because the Court's disposition of plaintiff's motion for class certification and the merits of plaintiff's claims appear to depend on an unsettled question of Kansas law, the Court ordered the parties to show cause why the Court should not certify that question to the Kansas Supreme Court. See Order To Show Cause (Doc. #90) filed August 28, 2024. This matter is before the Court on the parties' responses and replies.[1]

Pursuant to K.S.A. § 60–3201, the Court may certify a question of law to the Kansas Supreme Court if it may be determinative of the cause pending in this Court and the Kansas Supreme Court and Kansas Court of Appeals have no controlling precedent on the question. The decision to certify rests in the sound discretion of the federal district court. Allstate Ins. Co. v.

[1] See Defendants' Response To Order To Show Cause And Brief In Opposition To Certification Of Question Of Law (Doc. #91) filed September 5, 2024; Plaintiff's Response To Order To Show Cause (Doc. #92) filed September 5, 2024; Plaintiff's Reply To Defendants' Response To Order To Show Cause (Doc. #93) filed September 12, 2024; Defendants' Reply Re: Order To Show Cause (Doc. #94) filed September 12, 2024.

Brown, 920 F.2d 664, 667 (10th Cir. 1990). Certification is particularly appropriate if the question to be certified is novel and the state law unsettled. See id.

Plaintiff and putative class members—the lessors (nonworking interest owners)—own royalty interests in various natural gas leases in Kansas. Defendants—the lessees (working interest owners)—operate the wells on the various leases and pay the lessors royalties on gas from the wells. Plaintiff alleges that defendants have breached the gas leases because they deducted from royalty payments to plaintiff and putative class members certain processing costs necessary to make the gas "marketable."[2] The implied covenant to market provides that absent an agreement to the contrary, defendants (as lessees and working interest owners) have the duty to produce a marketable product, and they alone bear the cost of doing so. Sternberger v. Marathon Oil Co., 257 Kan. 315, 330, 894 P.2d 788, 799 (1995); see also Coulter v. Anadarko Petro. Corp., 296 Kan. 336, 362, 292 P.3d 289, 306 (2013) (lessee must bear entire cost of putting gas in condition to be sold); Fawcett v. Oil Producers, Inc. of Kan., 302 Kan. 350, 352, 352 P.3d 1032, 1034–35 (2015) ("Fawcett I") (lessees must "make gas marketable at their own expense"). Under the Marketable Condition Rule, once gas is in marketable condition, the lessee can charge the lessor (as a nonworking interest owner) a proportionate share of (1) "the cost to transport the gas to a market" and (2) "the cost to enhance the value of the gas stream, e.g., the processing costs to extract a saleable component such as helium." Coulter, 296 Kan. at 362, 292 P.3d at 306; see Sternberger, 257 Kan. at 331, 894 P.3d at 800 (once marketable product obtained, reasonable costs to transport or enhance value of marketable gas may be charged against lessors).

[2] Before gas from a well reaches the interstate pipeline market, it usually must undergo several midstream services, including gathering, compression, dehydration, treatment and processing. For purposes of this order, the Court collectively refers to the costs of midstream services as processing costs.

Plaintiff alleges that defendants improperly deducted processing costs from royalties on gas which they sold at the tailgate of the processing plant, i.e. in the interstate pipeline market. In seeking class certification, plaintiff argues that such gas is not marketable unless and until it is "in a condition acceptable to *the actual* purchaser [the interstate pipeline market], not to *any* potential purchaser." Plaintiff's Response at 3 (emphasis in original). In making this argument, plaintiff invokes Fawcett I, supra, and Cooper Clark Found. v. Oxy USA Inc., 58 Kan. App. 2d 335, 469 P.3d 1266 (2020), rev. denied (2020). Plaintiff argues that defendants therefore bear all costs of processing to make their gas acceptable in the interstate pipeline market.

Defendants respond that "gas is and can be marketable at the well even when it is not sold there and even when the gas is enhanced by processing or otherwise prior to its sale." Defendants' Response To Plaintiff's Motion For Class Certification And Brief In Support (Doc. #71) filed May 7, 2024 at 17. Defendants base their argument on Coulter, supra, Sternberger, supra; and Matzen v. Hugoton Prod. Co., 182 Kan. 456, 321 P.2d 576 (1958). Defendants argue that for at least some of the wells, plaintiff and putative class members must bear a proportionate share of processing costs because the gas from those wells is in marketable condition before it reaches the interstate pipeline market, even if it is ultimately destined for that market.[3]

For reasons stated below, it appears that no controlling Kansas precedent defines when gas sold away from the well is first "marketable."[4]

---

[3] Defendants argue that the quality and condition of the gas from the numerous wells in the putative class are not uniform, and that the trier of fact ultimately will have to determine whether gas from individual wells was in a marketable condition at some point before it reached the processing plant.

[4] In applying Kansas law, the Court defers to the judgments of the Kansas Supreme Court, but the decisions of lower state courts are not binding. Safeco Ins. Co. of Am. v. Hilderbrand, 602 F.3d 1159, 1163 (10th Cir. 2010) (lower state court opinions are persuasive,

(continued. . .)

On August 28, 2024, the Court directed the parties to show good cause why the Court should not certify to the Kansas Supreme Court the following question of Kansas law: under the Marketable Condition Rule, does an operator's duty to solely bear the expense in making the product marketable continue until the gas is in a condition to be sold to (a) any potential purchaser of the gas or (b) the intended purchaser of the gas from the royalty owner's well? Both plaintiff and defendants assert that certification is unnecessary because Kansas law is clear on this issue. Unfortunately, plaintiff and defendants offer diametrically opposed interpretations of what Kansas law is.

## I. Plaintiff's View Of Controlling Kansas Law

Highly summarized, plaintiff argues that gas first becomes marketable when its condition is acceptable to the actual, intended purchaser—here, the interstate pipeline market—and that defendants have sole financial responsibility for making the gas marketable in that market. In advancing this argument, plaintiff relies on the Kansas Supreme Court opinion in Fawcett I, supra, and the Kansas Court of Appeals opinion in Cooper Clark, supra.

### A. Fawcett I

Plaintiff argues that under Fawcett I, gas is not marketable until it is in a condition acceptable to "*the actual* purchaser"—here, the interstate pipeline market—"not to *any* potential purchaser." Plaintiff's Response at 2. In Fawcett I, the Kansas Supreme Court held that as a matter of law, when a lease provides for royalties based on sales of gas at the well, and the gas is actually sold at the well, the lessee's duty to make the gas marketable does not extend beyond the well to post-sale expenses. 302 Kan. at 365, 352 P.3d at 1042. In Fawcett I, plaintiff had

[4](. . .continued)
binding). Even so, for purposes of the certification statute, K.S.A. § 60–3201, the Court must find that the Kansas Supreme Court and the Kansas Court of Appeals have no controlling precedent on the question.

claimed that as a matter of both law and fact, gas sold at the well was not marketable until it was processed and entered an interstate pipeline, so under the Marketable Condition Rule, the lessee was required to bear all processing and transportation costs before that point. The Kansas Supreme Court specifically rejected plaintiff's argument that "marketable condition" equates with interstate pipeline quality, but did not set specifically define when gas becomes marketable. Id. at 361, 352 P.3d at 1039. It concluded that the "duty to make gas marketable is satisfied when the operator delivers the gas to the purchaser in a condition acceptable to the purchaser in a good faith transaction." Id. at 365, 352 P.3d at 1042.

On its facts, Fawcett I establishes that as a matter of law, when gas is sold at the well, the gas is marketable at that location. Fawcett I, however, did not purport to address the reverse question: whether gas is or can be marketable at the well even if no sales occur there and the intended market is the interstate pipeline. In Fawcett I, the Kansas Supreme Court recognized that what it means for gas to be marketable remains an open question. 302 Kan. at 363–64, 352 P.3d at 1041.

In other words, contrary to plaintiff's suggestion, Fawcett I does not hold that if gas is intended for the interstate pipeline, it is not marketable until it is in a condition to be sold there.

B. Cooper Clark

In Cooper Clark, a panel of the Kansas Court of Appeals determined that under Fawcett I, "when parties define a market for gas through their conduct, that gas is marketable when it is in a condition acceptable for that intended market." 58 Kan. App. 2d at 347, 469 P.3d at 1276. The Kansas Court of Appeals held that "[w]hen the parties have agreed that the gas at issue will be sold in the interstate market, that some of the gas produced from the same well could be used at the wellhead or at a farmhouse does not make the gas at issue marketable under the

marketable-condition rule." Id. at 335, Syl. ¶ 4, 469 P.3d at 1269, Syl. ¶ 4.

Plaintiff argues that Cooper Clark's "intended market" principle necessarily follows from Fawcett I and Ely v. Wichita Nat. Gas Co., 99 Kan. 236, 161 P. 649 (Kan. 1916). Plaintiff's Response at 4. In Ely, the Kansas Supreme Court addressed the meaning of the term "merchantable" in a gas sales contract. It held that under the contract, gas is "merchantable" when it is of a grade or quality as could be sold at the ordinary price without discount for its failure to measure up to the general standard for such gas. 161 P. at 653 (rejecting interpretation that gas is "merchantable" merely because "it will burn, and is capable of producing light and heat, and can be sold and used for that purpose"). Ely is consistent with Cooper Clark. Still, Ely was decided in 1916 and some 100 years later, in Fawcett I, the Kansas Supreme Court noted that for purposes of the Marketable Condition Rule, no Kansas case had addressed the precise quality or condition at which gas becomes marketable. See Fawcett I, 302 Kan. at 363–64, 352 P.3d at 1041. The Court therefore rejects plaintiff's argument that Cooper Clark's "intended market" principle necessarily follows from Fawcett I and Ely.

No court has cited Cooper Clark as controlling law on when gas becomes "marketable" under Kansas law.[5] In fact, in dicta, the Kansas Supreme Court has referred to Cooper Clark's intended market analysis as "novel." L. Ruth Fawcett Tr. v. Oil Producers Inc. of Kan., 315 Kan. 259, 282, 507 P.3d 1124, 1140 (2022) ("Fawcett II"); see also id. at 283, 507 P.3d at 1141 (recognizing "many substantive problems with the Class newly developed intended market argument," but limiting its holding to law of case doctrine). In addition, the Kansas Supreme Court has distinguished Cooper Clark because (1) the lessee in that case received gas

[5] In determining whether to certify the proposed question of law to the Kansas Supreme Court, the Court must determine whether Cooper Clark provides controlling law on the question. See K.S.A. § 60–3201 (courts may certify questions which may be determinative of cause pending in certifying court if no controlling precedent from Kansas appellate courts).

components back for sale after a third party processed the gas and (2) the Kansas Court of Appeals decided the issue in the procedural context of class certification. Fawcett II, 315 Kan. at 282, 507 P.3d at 1140; see Cooper Clark, 58 Kan. App. 2d at 338–39, 507 P.3d at 1272. These comments make clear that Cooper Clark's novel analysis is not controlling law on the determinative merits question in this case: when gas first becomes marketable for purposes of the Marketable Condition Rule.

## II. Defendants' View Of Controlling Kansas Law

Defendants argue that certification is not necessary because the Kansas Supreme Court has controlling law which answers the question of when gas is first marketable. Defendants' Response at 2 (citing Coulter, supra; Sternberger, supra; and Matzen, supra). Coulter, Sternberger and Matzen support defendants' conclusion that gas is marketable if it is in such a condition that it can be sold in some market.[6] Even so, as noted above, in 2015, in Fawcett I, the Kansas Supreme Court recognized that what it means for gas to be marketable remains an open question. Fawcett I, 302 Kan. at 363–64, 352 P.3d at 1041. The Court therefore rejects

[6] See Coulter, 296 Kan. at 362, 292 P.3d at 306 ("[O]nce the gas is in marketable condition, *regardless of whether a market actually exists at that point*," the royalty owner can be charged its proportionate share of costs to transport gas to market and costs to enhance value of gas stream) (emphasis added); Sternberger, 257 Kan. at 331, 894 P.2d at 800 (where gas is marketable at well but no market exists at well, lessor must bear proportionate share of cost of transporting gas to point of sale); Matzen, 182 Kan. at 463, 321 P.2d at 582 (in proceeds lease, where lessee transports gas in its gathering system off premises and then processes it, lessee can deduct from gross proceeds reasonable expenses relating directly to costs of gathering, processing and marketing the gas); see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc., 725 F.3d 1213, 1219 (10th Cir. 2013) (once gas is in marketable condition, implied duty to market is satisfied "regardless of whether a market exists at that location"); Hitch Enters., Inc. v. Oxy USA Inc., No. 18-1030-EFM, 2019 WL 3202257, at *5–6 (D. Kan. July 16, 2019) (interpreting Fawcett I for proposition that duty to put gas into marketable condition can be satisfied only by actually marketing it would represent significant shift in Kansas law); id. at *5 ("gas may be marketable before it is marketed"); id. at *6 ("gas may be in a marketable condition before it is marketed in a good faith transaction").

defendants' argument that these three cases—which predate Fawcett I—are controlling precedent on the question on when gas first becomes marketable.

## III. Conclusion

The Court finds no controlling precedent from the Kansas Supreme Court or Kansas Court of Appeals on the determinative question whether gas first becomes "marketable" when it is in such a condition that it can be sold to some potential purchaser in some market, or only when it reaches defendants' actual intended purchaser in the interstate pipeline market.[7]

**IT IS THEREFORE ORDERED that pursuant to K.S.A. § 60–3201, the Court certifies the following question of Kansas state law to the Kansas Supreme Court: under the Marketable Condition Rule, does a lessee's duty to make the gas marketable at its own expense end when the gas is in such a condition that it can be sold in some market to some potential purchaser or does a lessee's duty continue until the gas is in such a condition that it can be sold in the market in which the lessee intends to sell and actually does sell the gas? The Kansas Supreme Court may reformulate the question.**

**IT IS FURTHER ORDERED that the Clerk of Court shall submit to the Kansas Supreme Court a certified copy of this Memorandum And Order, together with copies of Defendants' Response To Order To Show Cause And Brief In Opposition To Certification Of Question Of Law (Doc. #91) filed September 5, 2024; Plaintiff's Response To Order To Show Cause (Doc. #92) filed September 5, 2024; Plaintiff's Reply To Defendants' Response**

[7] Defendants argue that if the Court certifies a question to the Kansas Supreme Court, the Court should include some three pages of "undisputed" facts with the certified question. Plaintiff, however, disputes many of defendants' proposed facts. Defendants have not shown that such factual background would be helpful to the Kansas Supreme Court. Certainly, the Kansas Supreme Court can order the parties to provide whatever record would assist its deliberations.

**To Order To Show Cause (Doc. #93) filed September 12, 2024; and Defendants' Reply Re: Order To Show Cause (Doc. #94) filed September 12, 2024. Costs of certification shall be paid as provided by K.S.A. § 60–3205.**

**IT IS FURTHER ORDERED that pending the Kansas Supreme Court's answer to the certified question, this action is administratively closed.**

Dated this 26th day of September, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge